IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JORGE GRADO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:24-CV-147-Z-BR |
| | § | |
| DIMMITT POLICE DEPARTMENT, | § | |
| *et al*., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION TO GRANT
DEFENDANT BRANDON ONTIVEROS AND BENJAMIN ELMORE'S
MOTION FOR SUMMARY JUDGMENT**

Before the Court is a Motion for Summary Judgment (the "Motion") filed by Defendants

Brandon Ontiveros and Benjamin Elmore. (ECF 41). For the reasons stated herein, the Magistrate

Judge recommends that the Motion be GRANTED.

## I.  FACTUAL BACKGROUND

On September 15, 2022, Grado and his mother were attending his brother's football game

at the Dimmitt, Texas, high school football field. During the game, Defendants Brandon Ontiveros

("Ontiveros") and Benjamin Elmore ("Elmore"), who are Dimmitt police officers, approached

Grado and asked him to follow them to the bottom of the bleachers, which he did. (ECF 16 at 5,

ECF 19 at 21). As soon as he saw the officers, Grado assumed they were there to arrest him because

he had outstanding federal warrants. (ECF 16 at 6). At the bottom of the bleachers, Elmore

handcuffed Grado, and Grado immediately felt a pinching pain in his right wrist. He informed the

officers, and Elmore uncuffed his right wrist so that Grado could remove his smart watch. After

Grado removed the watch, Elmore re-cuffed him with his hands behind his back. Removing the

watch did not alleviate the problem, so Grado alleges that he again complained several times that

1

his hand was tingling and that the cuff was biting into him. While at the stadium, Elmore added a "chain" to extend the cuffs due to Grado's wide shoulders. (ECF 16 at 8).

Grado ultimately was transported to the Castro County jail, where the handcuffs were removed approximately two and a half hours after he was first cuffed. (*Id*. at 9-10). After the handcuffs were removed, he claims that his right wrist began cramping and was noticeably swollen. He states that it was tingling, numb and extremely painful. (*Id.* at 10).

Grado filed suit on January 11, 2024, against several defendants. His excessive force claims and failure to render medical aid against Ontiveros and Elmore survived screening and they were ordered to answer. Defendants filed this Motion for Summary Judgment, asserting that Grado's claims should be dismissed as barred by qualified immunity. Grado did not respond to the Motion.

## II. SUMMARY JUDGMENT STANDARD

### A.    Summary Judgment is Proper if No Genuine Dispute as to Any Material Fact.

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must resolve all reasonable doubts in favor of the party opposing the motion. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co*., 655 F.2d 598, 602 (5th Cir. 1981).

The movant has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Anderson,* 477 U.S. at 247. If the movant bears the

2

burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The nonmovant then must provide affirmative evidence to defeat summary judgment. *Anderson*, 477 U.S. at 257. No "mere denial of material facts nor...unsworn allegations [nor] arguments and assertions in briefs or legal memoranda" will suffice to carry this burden. *Moayedi v. Compaq Comput. Corp.*, 98 F. App'x 335, 338 (5th Cir. 2004). The Court requires "significant probative evidence" from the nonmovant in order to dismiss a request for summary judgment supported appropriately by the movant. *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001). The Court must consider all evidence but must not make any credibility determinations or weigh the evidence. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

Because he proceeds *pro se*, Grado's pleadings are held to a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed") (quotation omitted). Nevertheless, *pro se* parties must "still comply with the rules of procedure and make arguments capable of withstanding summary judgment." *Ogbodiegwu v. Wackenhut Corr. Corp.*, 202 F.3d 265, 1999 WL 1131884, at *2 (5th Cir. Nov. 10, 1999); *Yazdchi v. Am. Honda Fin. Corp.*, 217 F. App'x 299, 304 (5th Cir. 2007) ("The right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law.") (citing *Hulsey v. Texas*, 929 F.2d 168, 171 (5th Cir. 1991)).

**B.    Defendants' Qualified Immunity Defense Alters the Burden of Proof.**

Defendants move for summary judgment on their affirmative defense of qualified immunity. "The doctrine of qualified immunity protects government officials from civil damages

liability when their actions could reasonably have been believed to be legal." *Argueta v. Jaradi*, 86 F.4th 1084, 1088 (5th Cir. 2023) (citing *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc)). Once an officer pleads qualified immunity, the plaintiff has the burden to establish that the officer violated the plaintiff's clearly established federal rights. *Argueta*, 86 F.4th at 1088 (citing *Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005)). "This is a demanding standard." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1517 (2016). Because qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law, … we do not deny its protection unless existing precedent places the constitutional question beyond debate." *Argueta*, 86 F.4th at 1088 (internal citation omitted).

A qualified immunity defense alters the usual summary judgment burden of proof. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id*. To trigger the qualified-immunity framework, however, the government official must "satisfy his burden of establishing that the challenged conduct was within the scope of his discretionary authority." *Sweetin v. City of Texas City*, 48 F.4th 387, 392 (5th Cir. 2022) (quoting *Cherry Knoll, L.L. C. v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019)). For example, in *Sweetin,* the Fifth Circuit held this "oft-overlooked threshold requirement" was dispositive "because state law does not give a permit officer the authority to conduct stops of any kind." *Sweetin,* 48 F.4th at 392. In this case, however, Grado does not dispute that Defendants were acting within the scope of their duties.

To determine if an official acting within the scope of his or her duties is entitled to qualified immunity, courts conduct a two-step analysis. First, they examine whether the plaintiff has shown

a violation of a constitutional right under current law. *Bevill v. Fletcher*, 26 F.4th 270, 275 (5th Cir. 2022) (quoting *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019)). Second, if a violation has occurred, courts determine whether the right in question was "clearly established" at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct. *Id.* In short, an officer is entitled to qualified immunity "if there is no violation, or if the conduct did not violate law clearly established at the time." *Bailey v. Iles*, No. 22-30509, 2023 WL 8062239 at *2 (5th Cir. Nov. 21, 2023). Courts have the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Each Defendant's conduct must be analyzed separately to determine if he is entitled to qualified immunity.

**C.      Grado's Failure to Respond is Not Dispositive.**

When a nonmoving party does not file a response to a motion for summary judgment, the failure to respond "does not permit the court to enter a 'default' summary judgment." *Boyd v. Fam. Dollar Stores of Texas, LLC*, No. 3:22-cv-1368-D, 2023 WL 4141052, at *1 (N.D. Tex. June 22, 2023). As the United States Court of Appeals for the Fifth Circuit has explained:

> [a] motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule. *John v. La. (Bd. of Trustees) for State Colleges & Universities*, 757 F.2d 698, 709 (5th Cir. 1985). The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed. *Id*. at 708. Therefore, if the district judge's decision was to grant summary judgment solely because of a default, such decision constituted reversible error.

*Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985); *see also Hetzel v. Bethlehem Steel Corp*., 50 F.3d 360, 362 & n.3 (5th Cir. 1995) (*citing Hibernia*). Moreover, Fed. R. Civ. P. 56(e) provides that:

> [i]f a party fails . . . to properly address another party's assertion of fact as required

5

by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion [and] (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]

Therefore, Defendants still must provide sufficient evidence upon which the Court may base a summary judgment. Failure to do so requires the Court to deny the Motion, even if it is unopposed.

### III. LEGAL ANALYSIS

**A.    Use of Video Evidence.**

Grado alleges that Defendants used excessive force by knowingly failing to remove tight handcuffs that were damaging his wrist. "[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015), (citing *Graham v. Connor*, 490 U.S. 386, 395, n.10 (1989)). To prove excessive force, a pretrial detainee must show: (1) that the defendant had "a purposeful, a knowing, or possibly a reckless state of mind" as to his "physical acts – *i.e.*, his state of mind with respect to the bringing about of certain physical consequences in the world," and (2) that the defendant's intentional actions were objectively unreasonable. *Id.* at 395-97. Put another way, the plaintiff must allege that the defendant knowingly or purposefully used force, and that the force was objectively unreasonable. *Id.* at 396-97.

Defendants provided video evidence taken from their body cameras and vehicle cameras that cover the entirety of their interactions with Grado. While the Court is to review the facts in the light most favorable to the non-moving party, "a plaintiff's version of the facts should not be accepted for purposes of qualified immunity when it is "blatantly contradicted" by video recordings. *Hodge v. Engleman*, 90 F.4th 840, 845-46 (5th Cir. 2024). The U.S. Supreme Court has instructed that, when the video evidence is conclusive, the Court should "view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007). As noted by the

6

*Hodge* court, the Fifth Circuit has applied this standard many times. *Hodge*, 90 F.4th at 846. In *Craig v. Martin*, the court reversed a denial of qualified immunity, reasoning that, when "there is video evidence that 'blatantly contradict[s]' the plaintiffs' allegations, the court should not adopt the plaintiffs' version of the facts; instead, the court should view those facts 'in the light depicted by the videotape.'" *Craig v. Martin*, 49 F.4th 404, 409 (5th Cir. 2022) (quoting *Scott,* 550 U.S. at 380-81); *see also Livingston v. Texas*, No. 22-40719, 2023 WL 4931923 (5th Cir. Aug. 2, 2023) (per curiam) (affirming summary judgment on qualified immunity grounds by relying on police dashcam footage that contradicted plaintiff's claims). "In sum, a court may rely on video evidence to resolve any claimed genuine disputes of material fact and rule on summary judgment." *Hodge*, 90 F.4th at 846. Therefore, when the video "blatantly contradicts" Grado's version of events, the video will control.

**B.      Grado's Claim of Excessive Force.**

As a pretrial detainee bringing an excessive force claim under Section 1983, Grado must establish "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force that was objectively unreasonable." *Bush v. Strain*, 513 F.3d 492, 500-01 (5th Cir. 2008); *see also Kingsley*, 576 U.S. at 397 (To prevail on an excessive force claim, a plaintiff must show "that the force purposely or knowingly used against him was objectively unreasonable."). As a pretrial detainee, Grado "can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Id.* at 398. In *Kingsley*, the U.S. Supreme Court identified certain factors to consider in determining the reasonableness of an officer's use of force:

> the relationship between the need for the use of force and the amount of force used;
> the extent of the plaintiff's injury; any effort made by the officer to temper or to

limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley*, 576 U.S. at 397. "In excessive-force claims, the reasonableness of an officer's conduct depends on the 'facts and circumstances of each particular case . . . .'" *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016) (quoting *Graham*, 490 U.S. at 396). Such a determination is based on "the perspective of a reasonable officer on the scene." *Id*. The court must examine "the reasonableness of the force from the perspective of a jailer who is often forced to make split-second decisions in tense situations." *Fairchild v. Coryell Cty*., 40 F.4th 359, 363 (5th Cir. 2022).

Grado's Amended Complaint contends that, after he was handcuffed, he complained several times that his hand was tingling and that the cuff was biting into him. Although he admits that Elmore uncuffed him to allow him to remove his watch, and later linked two sets of handcuffs together due to Grado's wide shoulders, he contends that Elmore and Ontiveros did nothing further when he repeatedly complained that the cuffs were too tight and were hurting him. Grado contends that the handcuffs were removed approximately two and a half hours after he was first cuffed. (ECF 16 at 9-10). After the handcuffs were removed, his claims that his right wrist began cramping and was noticeably swollen. He states that it was tingling, numb and extremely painful and that the handcuffs caused extensive nerve damage. (*Id.* at 10).

### 1. Excessive Force Claim Against Elmore.

According to the video evidence, Grado complained only once about the handcuffs to Elmore and Ontiveros as he was sitting in the back of Elmore's vehicle; Elmore immediately uncuffed him entirely, allowed him to remove his watch, and added a second set of handcuffs. (ECF 43 at 5-9, 19-23; 34-36). Additionally, the undisputed summary judgment evidence demonstrates that Grado's wrist injury was due to a pre-existing injury and not as a result of the handcuffs. (*Id*. at 6-7, 19). In addition, the undisputed evidence shows that, when Elmore

handcuffed Grado, he left a finger's width of space between the cuff and wrist, which is approximately half an inch between the cuff and wrist. (*Id*. at 6-7). Elmore explained he does this so the cuff is not too tight around a suspect's wrist and they can have proper circulation and movement of their wrists even handcuffed. (*Id*.). After learning of Grado's pre-existing injury, he was careful to give Grado not only an extra set of handcuffs between his wrists but asked him how each cuff felt around his wrists before he put him back in his patrol car. (*Id*.).

Handcuffing generally is not, in itself, excessive force. *See Johnson v. Morel*, 876 F.2d 477, 480 (5th Cir. 1989); *Neague v. Cynkar*, 258 F.3d 504, 508 (6th Cir. 2001) ("the handcuffing of a person in the course of an otherwise lawful arrest fails, as a matter of law, to state a claim for excessive force"). Even placing handcuffs too tightly on an offender, alone, does not amount to excessive force. *Templeton v. Jarmillo*, 28 F.4th 618, 622 (5th Cir. 2022); *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). Minor or incidental injuries associated with the use of handcuffs or restraints are considered *de minimis* and do not give rise to a constitutional claim of excessive force. *See Juarez v. Pizana*, No. 3:17- CV-368, 2018 WL 3846039, at *6 (W.D. Tex. June 29, 2018) (citing *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007)). While Grado alleges in his Amended Complaint that he suffered a wrist injury and permanent nerve damage because Elmore handcuffed him too tightly, the conclusive video evidence refutes his claim and shows that Elmore did not use excessive force when handcuffing Grado. In addition, the video evidence shows that Grado was handcuffed for approximately one hour, and not for more than two hours, as alleged by Grado. Elmore's Motion should be granted.

### 2. Excessive Force Claim Against Ontiveros.

The undisputed evidence shows that Ontiveros did not handcuff Grado; accordingly, Grado's complaint that Ontiveros handcuffed him too tightly is meritless. (ECF 43 at 28, 19-23;

34-36). As the Fifth Circuit has noted, "[p]ersonal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). Because Ontiveros had no personal involvement in handcuffing Grado, Ontiveros's Motion should be granted on the excessive force claim against him.

**C.    Grado's Claim of Bystander Liability Against Ontiveros.**

The theory of bystander liability applies to Section 1983 claims for use of excessive force against a pretrial detainee. *See, e.g., Kitchen v. Dallas Cnty., Tex.*, 759 F.3d 468, 480 (5th Cir. 2014). To prevail, Grado must show that Ontiveros "(1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but, nevertheless, (4) chose not to act." *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020).

An officer will not be liable on a bystander-liability claim if the plaintiff cannot prove an underlying constitutional violation. *See Reynolds v. Wood Cnty., Tex.*, No. 22-40381, 2023 WL 3175467, at *4 (5th Cir. May 1, 2023). As shown above, Grado has not proven an underlying constitutional violation by Elmore; as a result, his bystander liability claim against Ontiveros fails as well.

**D.    Grado's Claim of Failure to Provide Medical Care.**

Grado's Complaint alleges that he told Elmore and Ontiveros numerous times that his handcuffs were too tight and were injuring him. (ECF 16 at 8-10.). He further claims that they ignored his complaints and kept him handcuffed for two and a half hours. (*Id*. at 9). Such indifference, Grado claims, led to him suffering irreversible nerve damage to his wrist. (*Id.* at 13).

"A detainee's right to medical care is 'violated if an officer acts with deliberate indifference to a substantial risk of serious medical harm and resulting injuries.'" *Campos v. Webb Cnty., Tex.*,

597 F. App'x 787, 793 (5th Cir. 2015). Officials may be liable for their acts or omissions if they had "subjective knowledge of a substantial risk of harm to a pretrial detainee but responded with deliberate indifference to that risk." *Converse v. City of Kemah*, 961 F.3d 771 at 775 (emphasis added) (citing *Jacobs v. West Feliciana Sheriff's Dept.*, 228 F.3d 388, 393 (5th Cir. 2000)). Establishing subjective deliberate indifference requires establishing that the official "knew of and disregarded an excessive risk to the inmate['s] health or safety." *McGarrah v. Kimbrow*, 2015 WL 105228, at *4 (N.D. Tex. Jan. 6, 2015) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). This requires that the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. "The correct legal standard is not whether the jail officers knew or should have known, but whether they had gained actual knowledge of the substantial risk ... and responded with deliberate indifference." *Campos*, 597 F. App'x at 793.

The undisputed summary judgment evidence shows that neither Defendant was subjectively aware of a substantial risk of serious harm due to Grado being handcuffed. As discussed above, the video evidence shows that Grado was not visibly in pain or even uncomfortable, nor did he complain about the handcuffs after they were adjusted at the scene by Elmore. (ECF 43 at 5-9; 19-23; 27-30). The evidence shows that neither Defendant observed and ignored serious injuries to Grado, nor did they ignore any requests for medical aid, nor did they fail to obtain medical assistance although believing it was necessary. (*Id*. at 5-9; 27-30). Defendants are entitled to summary judgment on Grado's claim of failure to provide medical assistance.

**E.**     **Grado Does Not Overcome the Second Prong of the Qualified Immunity Analysis.**

Even assuming that Defendants' conduct resulted in a violation of Grado's constitutional rights, Grado has not shown that Defendants' conduct was objectively unreasonable in light of clearly established law. "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation omitted). There are two ways for a plaintiff to demonstrate that a defendant's conduct violated clearly established law. *Batyukova v. Doege,* 994 F.3d 717, 726 (5th Cir. 2021). Under the first, more typical approach, the plaintiff must "identify a case" or "body of relevant case law" in which "an officer acting under similar circumstances ... was held to have violated the [Constitution]." *Id*. While there need not be a case directly on point, the unlawfulness of the challenged conduct must be beyond debate. *Id*. Under the second approach, there can be the rare "obvious case," where the unlawfulness of the officer's conduct is so egregious that it is sufficiently clear although existing precedent does not address similar factual circumstances. *See Doege*, 994 F.3d at 726 (citing *Dist. of Columbia v. Wesby*, 538 U.S. 48, 65 (2018)); *see also Brosseau v. Haugen*, 543 U.S. 194, 199 (2004).

"In determining what constitutes clearly established law, [the Fifth Circuit] looks to Supreme Court precedent and then to [its] own." *Hicks v. LeBlanc*, 81 F.4th 497, 503 (5th Cir. 2023), (quoting *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018)). When there is no direct controlling authority, "[the Fifth Circuit] may rely on decisions from other circuits to the extent that they constitute a robust consensus of cases of persuasive authority." *Id.* "It is the plaintiff's burden to find a case in his favor that does not define the law at a high level of generality." *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019).

This is not the rare "obvious case" in which the unlawfulness of the officer's conduct is so egregious that it is sufficiently clear such actions violate a prisoner's rights. Further, Grado provided no case law in response to the Motion that supports his position. Thus, he failed to meet his burden to show that Defendants should have known that their conduct violated clearly established law.

**F.    Defendants Are Entitled to Qualified Immunity.**

For the reasons stated above, Grado failed to provide sufficient evidence to create a fact issue as to Defendants' entitlement to qualified immunity. Specifically, Grado failed to create a material fact issue as to whether Defendants' conduct, as shown in the videos and as alleged by Grado, violated Grado's constitutional rights. Further, Grado failed to create a material fact issue as to whether Defendants' conduct violated Grado's clearly established rights. Defendants' motion for summary judgment on qualified immunity should be granted.

## IV. RECOMMENDATION

For the reasons set forth above, the U.S. Magistrate Judge recommends that Defendants' Motion For Summary Judgment be GRANTED and that Plaintiff's claims be dismissed with prejudice.

## V. INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED March 9, 2026.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

### \* <u>NOTICE OF RIGHT TO OBJECT</u> \*

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988).